UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  

Hearing Date: September 23, 2009  
Hearing Time: 9:30 AM  

-----------------------------------------------------X

IN RE:

    Stephanie Grossman,

                        DEBTOR.

CASE NO.: 09-75542 reg  

Chapter: 7  

JUDGE: ROBERT E. GROSSMAN

-----------------------------------------------------X

## NOTICE OF MOTION FOR ORDER
## GRANTING RELIEF FROM AUTOMATIC STAY

SIRS:

    **PLEASE TAKE NOTICE** that Chase Home Finance, LLC ("Movant") seeks relief from the automatic stay as to the property located at 29 Fisk Avenue, Merrick, NY 11566, (the "Premises") and will move before the Honorable Robert E. Grossman, United States Bankruptcy Judge in the United States Bankruptcy Court for the Eastern District of New York located at Long Island Federal Courthouse, 290 Federal Plaza, Central Islip, NY 11722, Courtroom 860, on September 23, 2009 at 9:30 AM, or as soon thereafter as counsel may be heard, for an Order:

    1.  Pursuant to Bankruptcy Rule 4001, 11 U.S.C. 362(d)(1) and 11 U.S.C. 362(d)(2) granting Movant, its successors and/or assigns, relief from the Automatic Stay; and

    2.  Granting Movant such other and further relief as is just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief herein requested shall be in writing, shall state with particularity the grounds for the objection, shall be filed with the Clerk of the Bankruptcy Court and served upon, the undersigned counsel for the Movant three (3) business days prior to the return date of the within Motion.

Dated: August 20, 2009
      Plainview, NY

                                   Respectfully submitted,

                                   ROSICKI, ROSICKI & ASSOCIATES, P.C.
                                   By: Lisa Milas, Esq.
                                   Attorneys for Movant
                                   Main Office: 51 East Bethpage Road
                                   Plainview, NY 11803
                                   516-741-2585

To:
Stephanie Grossman
Debtor
29 Fisk Avenue
Merrick, NY 11566

Gregg H. Grossman
Co-Mortgagor
29 Fisk Avenue
Merrick, NY 11566

Richard A. Klass, Esq.
Attorney for Debtor
16 Court Street, 29th FL
Brooklyn, NY 11241

Marc A. Pergament, Esq.
Trustee
400 Garden City Plaza, Suite 403
Garden City, NY 11530

Diana G. Adams, Esq.
United States Trustee
Long Island Federal Courthouse
560 Federal Plaza – Room 560
Central Islip, NY 11722-4437

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
IN RE:                                          CASE NO.: 09-75542 reg

   Stephanie Grossman,                          Chapter: 7

                  DEBTOR.        JUDGE: ROBERT E. GROSSMAN
------------------------------------------------------X

## ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY

Upon the Application, dated  August 20, 2009 (the "Application"), of  Chase Home

Finance, LLC  (the "Movant"), by its attorneys, Rosicki, Rosicki & Associates, P.C., seeking an

Order: (i) modifying and terminating the automatic stay to permit the Movant to exercise all of

its rights and remedies with respect to certain collateral consisting of the real property known as

29 Fisk Avenue, Merrick, NY 11566,  (the "Premises"); and (ii) granting Movant such other and

further relief as the Court deems just and proper; and

The Application having come before this Court to be heard on September 23, 2009; and

no opposition to the relief requested having been heard; and in consideration of the foregoing,

and upon the affidavit of service filed with the Court, the record made at the hearing on the

Application and the decision reached at the conclusion thereof; and after due deliberation, the

relief requested appearing reasonable, proper and warranted in fact and by law under Section

362(d)(1) of the Code to permit Movant to exercise all of its rights and remedies under

applicable law with respect to the Premises, it is hereby

**ORDERED** that the Application of Movant is granted modifying the automatic stay to

allow Movant, its successors and/or assigns, to commence and/or continue with a foreclosure

action and eviction proceeding with respect to the Premises; and it is further

**ORDERED** that Movant may obtain a determination of any deficiency due it, if allowed

under state law, and may file a proof of claim as an unsecured creditor for any such deficiency

awarded therein, and it is further

**ORDERED** that the Trustee be entitled to notice of the balance of surplus funds, if any, as result of the foreclosure sale; and it is further

**ORDERED** that the stay invoked pursuant to F.R.B.P. 4001(a)(3) is waived and this order is effective upon the signing of this order.

Dated:                        , 2009
                        , New York

_____

Hon. Robert E. Grossman
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

    Stephanie Grossman,

                Debtor.

# ORDER GRANTING RELIEF FROM
# THE AUTOMATIC STAY

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

IN RE:                                              CASE NO.: 09-75542 reg

Stephanie Grossman,                                 Chapter: 7

                    DEBTOR.    JUDGE: ROBERT E. GROSSMAN

-------------------------------------------------------X

## APPLICATION IN SUPPORT OF AN ORDER
## MODIFYING AND TERMINATING THE AUTOMATIC STAY

**TO:   THE HONORABLE ROBERT E. GROSSMAN**
       **UNITED STATES BANKRUPTCY JUDGE:**

The Application of Chase Home Finance, LLC ("Movant"), by its attorneys, Rosicki,

Rosicki & Associates, P.C., respectfully represents and says:

Lisa Milas, Esq., an attorney at law duly admitted to practice before this Court and the

Courts of the State of New York, hereby affirms the following to be true under penalty of

perjury:

**I.    RELIEF REQUESTED**

1. This is a contested matter brought pursuant to Federal Rules of Bankruptcy Procedure

Rules 4001, 9013 and 9014 and Sections 361, 362(d) of Title 11 of the United States Code (the

"Bankruptcy Code"), for an Order: (i) granting Movant, its successors and/or assigns, relief from

the automatic stay due to the failure of   Stephanie Grossman,  (the "Debtor") to make payments,

and/or offer and provide Movant with adequate protection for its security interest in the property

located at 29 Fisk Avenue, Merrick, NY 11566 . (the "Premises"); and (ii) granting Movant such

other and further relief as is just and proper.

## II.    BACKGROUND

2.    Movant is the holder, by assignment, of a Note and Mortgage, dated November 9, 2004, given by Stephanie Grossman, (the "Debtor") and Gregg H. Grossman (the "Co-Mortgagor") in the original principal amount of $288,000.00  pledging the Premises as security. Copies of the Mortgage and Assignment are annexed hereto as Exhibit "A".

3.    On July 28, 2009, the Debtor filed with the Clerk of this Court a petition for relief under Chapter 7 of the Bankruptcy Code.

## III. THE APPLICATION

4.    As required by E.D.N.Y. Administrative Order #533, the completed motion for relief Worksheet (the "Worksheet") is attached hereto as Exhibit "B".

5.    Based upon information provided by Movant, the Debtor and Co-Mortgagor are in contractual default under the terms of the Note and Mortgage for failure to make timely payments in the amount of $2,560.21 per month, and the loan is contractually due for December 1, 2008.

6.    That by failing to make mortgage payments, the Debtor and Co-Mortgagor have failed to provide Movant with adequate protection for its security, entitling Movant, its successors and/or assigns, to relief from the automatic stay.

7. Additionally, there is insufficient equity in the Premises.

8. Based upon information provided by the Movant, Movant's total lien on the Premises as of the date of the within application is $294,502.76.

9. According to Debtor the Premises has an estimated value of $290,000.00.  A copy of Debtor's Schedule A, is annexed hereto as Exhibit "B".

Case 8-09-75542-reg    Doc 8    Filed 08/21/09    Entered 08/21/09 15:54:57


10. Based upon the above, no equity exists in this Premises and it is not necessary for the Premises to be maintained by the estate. Consequently, Movant is entitled to relief from the automatic stay so that it may proceed with the enforcement of its security interest in the Premises.

11. For the reasons stated above, the Debtor has failed to adequately protect the interest of Movant, causing Movant irreparable harm and injury.

12. Additionally, by seeking relief under Chapter 7, Debtor is not seeking to reorganize and thus, the Premises is not necessary for a successful reorganization. Therefore, relief from stay is warranted pursuant to Section 362(d)(2).

## IV. CONCLUSION

13. Relief from the stay is warranted under Section 362(d). Accordingly, the automatic stay must be modified to permit Movant to assert its rights in the Premises, including, but not limited to, the consummation of a foreclosure sale and eviction proceedings with respect to the Premises.

**WHEREFORE**, Movant respectfully requests that an Order be granted modifying the automatic stay as to it, and its successors and/or assigns, permitting maintenance of a mortgage foreclosure action and eviction proceeding with respect to the Premises; and for such other and further relief as the Court may deem just and proper.

Dated: August 20, 2009
      Plainview, NY

Respectfully submitted,

ROSICKI, ROSICKI & ASSOCIATES, P.C.
By: Lisa Milas, Esq.
Attorneys for Movant
Main Office: 51 E. Bethpage Road
Plainview, NY 11803
516-741-2585

# Exhibit A



### NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 11-29-2004
Recorded Time:  2:38:05 p

Liber Book: M 27968
Pages From:        864
        To:        882

Record and Return To:
JPMORGAN CHASE BANK
ATT DOCUMENT CONTROL DEPT 400
10790 RANCHO BERNARDO RD
SAN DIEGO, CA  92127

Control
Number:  1994
Ref #: CV  098637
Doc Type: M01  MORTGAGE

Location:                     Section Block    Lot      Unit
HEMPSTEAD (2820)              0056   00358-00 00058

Consideration Amount:        288,000.00

                              Taxes Total        2,855.00
                          Recording Totals          92.00
AAR001                       Total Payment        2,947.00

**THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED**
KAREN V. MURPHY
COUNTY CLERK



200411290199



Return To:
JPMorgan Chase Bank

Att: Document Control,
Dept. 600, 10790 Rancho
Bernardo Rd. San Diego,
CA 92127
Prepared By:
Keilman, Cecil

[Space Above This Line For Recording Data]

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated November 9, 2004
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." STREGORES GROSSMAN and GREGOR GROSSMAN, Wife and Husband

whose address is 28 FISK AVE
BERRICK, New York 11588
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender." JPMorgan Chase Bank

will be called "Lender." Lender is a corporation or association which exists under the laws of
New York
New York, New York 10081           . Lender's address is 1 Chase Manhattan Plaza

*PREMISES IMPROVED BY
4 1 OR 2 FAMILY DWELLING*

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033 1/01

105496879d

NC CLERK

(H) "Note." The note signed by Borrower and dated November 9, 2004 _____, will be called the "Note." The Note shows that I owe Lender Two Hundred Eighty-Eight Thousand and 00/100ths _____ Dollars (U.S. $288,000.00 _____ ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by December 1, 2034

(I) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."

(J) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(K) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(L) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                       ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

(M) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(N) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(O) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card, such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(P) "Escrow Items." There items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentation of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

1004886704

Initials _____

Page 2 of 14

Form 3033 1/01

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender those rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

**DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described in (A) through (H) below:

(A) The Property which is located at
20 FISK AVE
MERRICK                                                                [Street],
This Property is in Nassau                     [City, Town or Village], New York 11566     [Zip Code]
description:   See Attached Schedule A           County. It has the following legal

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

100465704

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require any payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return, or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payment when it accepts such payment. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and,

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

100-4035794

_____(NY) (0811).01

Page 6 of 17

Initials: _____

Form 3033 1/01

MC CLERK

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full. Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items":

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known, as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premiums for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the amount necessary required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promise and agreement" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will, pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

1094958794

*signature* 202 646

Page 5 of 17         Form 3033 1/01

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligations to Pay Charges, Assessments and Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

1094002704

this Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c)

US CLERK

Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, I give Lender my rights to any insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property. If the rights are applicable to the coverage of the Property, Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. That one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purpose. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

1004966794

CB-6(NY) 00211.00                    Page 6 of 17                    Form 3033  1/01

_init._ **Gg GHG**

NY CLERK

**8. Borrower's Loan Application.** If during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

1094256794

Page 8 of 17

Initials _____

Form 3033 1/01

NC CLERK

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loan Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loan Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security gives in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The amount, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

100-9860796

NY/CA-4 (NY) 0806.00                Page 14 of 17                Form 3033 1/01

Initials _____

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me in writing, from my obligations.

Lender may allow these delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amount remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

1094858794

Form 3033 1/01

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 19.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of any change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will contain all of the conflicting provisions did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights if the Property is Sold or Transferred. Lender may require immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

1094856704

NYFrhh.14                    Page 45 of 49                    Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (i) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also will say the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time

1004355784

period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Right if Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to

NC CLERK

the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states

    (1) The promise or agreement that I failed to keep or the default that has occurred;

    (2) The action that I must take to correct that default;

    (3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

    (4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of foreclosure and Sale;

    (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

    (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the New York lien fund provisions of Section 13 of the New York State Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property (check box as applicable).

  ☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

  ☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

  ☐ This Security Instrument does not cover real property improved as described above.

1004058704

                Page 16 of 17

Initials _SDG GH&_     Form 3033 1/01

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____    Stephanie Grossman (Seal)
                             STEPHANIE GROSSMAN      -Borrower

_____    Gregg H. Grossman (Seal)
                             Gregg H. Grossman      -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                           -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                           -Borrower

_____ (Seal)    _____ (Seal)
              -Borrower                           -Borrower

*0049950794*

STATE OF NEW YORK, NASSAU                        County ss:

On the 9TH    day of November, 2004         before me, the undersigned, a notary
public in and for said state, personally appeared FERNANDE GROSSER  + Gregg H. Grossman

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

MICHAELE GIBBONS
Notary Public, State Of New York
No. 4382925
Qualified In Nassau County
Commission Expires June 28, 2008

The Map Information:

**LEGIBILITY POOR
FOR MICROFILM**

1054955794

Page 17 of 18                              Form 3033  1/01

NC CLERK

*TITLE NO. 306-N-21322*



**SCHEDULE A**

*All that certain plot, piece or parcel of land, situate, lying and being at Merrick, in the Town of Hempstead, in the County of Nassau, State of New York, bounded and described as follows:*

*KNOWN AND DESIGNATED on a certain map entitled, "Map of the Ground of the Long Island Camp Meeting Association at Merrick, Long Island" laid out and mapped by A.L. Foote, C.E. and Surveyor, May 1884 and filed as map number 240 in Queens County Clerk's Office on August 5, 1884 and also filed as map number 16 in the Nassau County Clerk's Office as and by the lot number fifty-eight (58), Case No. 129.*

*FOR CONVEYANCING ONLY, IF INTENDED TO BE CONVEYED. TOGETHER WITH ALL RIGHTS, TITLE AND INTEREST OF, IN AND TO ANY STREETS AND ROADS ABUTTING THE ABOVE DESCRIBED PREMISES TO THE CENTER LINE THEREOF.*

RR&A #       09-111163
COUNTY:      Nassau
SECTION:     56
BLOCK:       358
LOT:         58

Form 8021*-Assignment of Mortgage without Covenant-
Individual or Corporation (Single Sheet)

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-
THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.**

KNOW THAT

**JPMorgan Chase Bank, NA** a corporation organized and existing under the laws of the United
States of America whose principal place of business is **1 Chase Manhattan Plaza, New York
NY 10081**
assignor,

in consideration of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable
consideration, paid by

**Chase Home Finance LLC** a corporation whose principal place of business is **3415 Vision
Drive, Columbus, OH 43219,**
assignee,

hereby assigns unto the assignee, a certain Mortgage dated November 9, 2004, made by GREGG
H. GROSSMAN STEPHANIE GROSSMAN to JPMorgan Chase Bank, NA in the principal sum
of $288,000.00 and recorded on July 29, 2004 in Liber/Reel 27968 of Mortgages, Page 864 in the
Office of the Clerk of the County of Nassau covering premises known as 29 FISK AVE,
MERRICK, NY 11566.

This assignment is effective as of November 9, 2004.

This assignment is not subject to the requirements of Section 275 of the Real Property Law
because it is an assignment within the secondary mortgage market.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due
and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the
assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees"
whenever the sense of this instrument so requires.

DATED: 5/22/09  JPMorgan Chase Bank, NA

By: _____

Stacy E. Spohn        Vice President

ACKNOWLEDGMENT

State of _____ Ohio _____ }
County of _____ Franklin _____ } ss.

    On the __22__ day of __May__ in the year __2009__ before me, the undersigned, personally appeared __Stacy E. Spohn_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in hisher heir capacity(ies), that by hisher heir signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of __Columbus_____, State of _____ Ohio _____.

_____
Notary Signature

JENNIFER M. JACOBY
Notary Public, State of Ohio
My Commission Expires 05-28-2012

Assignment of Mortgage
Without Covenant

TITLE NO.

================================

JPMorgan Chase Bank, NA

TO

Chase Home Finance LLC

================================

SECTION:  56

BLOCK:    358

LOT:      58

COUNTY OR TOWN: Nassau
PROPERTY ADDRESS:
29 FISK AVE
MERRICK, NY 11566

RECORD AND RETURN TO:

_____
Chase Home Finance., LLC
10790 Rancho Bernardo Boulevard
San Diego, CA 92127

**Exhibit B**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
IN RE:                                          Chapter 7
Stephanie Grossman,                             Case# 09-75542 reg
                                    Debtor.
--------------------------------------------------------------x

---

### RELIEF FROM STAY - REAL ESTATE AND COOPERATIVE APARTMENTS

---

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: 29 Fisk Avenue, Merrick, NY 11566,

2. LENDER NAME: Chase Home Finance, LLC

3. MORTGAGE DATE: 11/09/2004

4. POST-PETITION PAYMENT ADDRESS: Chase Home Finance, LLC, 3415 Vision Drive, Columbus, OH 43219-6009

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AT THE TIME OF FILING THE MOTION: $294,502.76 as of 7/31/09 (THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVEAPARTMENT AS OF THE MOTION FILING DATE: $290,000.00

7. SOURCE OF ESTIMATED MARKET VALUE: Debtor's Schedule A

**STATUS OF THE DEBT AS OF THE PETITION DATE**

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

| | |
|---|---|
| A. TOTAL: | $294,502.76 as of 7/31/09 |
| B. PRINCIPAL: | $273,174.08 |
| C. INTEREST: | $12,529.86 |
| D. ESCROW (TAXES AND INSURANCE): | $5,686.82 |
| E. FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $0.00 |
| F. PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): | $1,400.00 |
| G. PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): | $315.00 |

9. CONTRACTUAL INTEREST RATE: 6.1250%
   (IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM.. STATE THE EXHIBIT NUMBER HERE:_____.)

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE: Inspection Fees: $56.00, BPO Fees: $168.00, Foreclosure Attorney Costs: $1,173.00
(IF ADDIITONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:_____.)

**AMOUNT OF POST-PETITION DEFAULT AS OF THE MOTION FILING DATE**

11. DATE OF RECEIPT OF LAST PAYMENT: No post petition payments have been received.

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: _1_ PAYMENT.

POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 8/1/2009 | $2,560.21 | | | | | $35.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **TOTALS** | **$2,560.21** | **$** | **$** | **$** | **$** | **$35.00** |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

       A. TOTAL:                             $700.00

       B. ATTORNEYS' FEES IN CONNECTION WITH THIS MOTION:   $550.00

       C. FILING FEE IN CONNECTION WITH THIS MOTION:     $150.00

       D. OTHER POST-PETITION ATTORNEYS' FEES:        $0.00

       E. POST-PETITION INSPECTION FEES:           $0.00

       F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES: $0.00

       G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:    $0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:      $0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:
*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:_____.)*

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT`S INTEREST IN THE SUBJECT PROPERTY.  FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND  LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT  TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY        ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT    MOVING PARTY. (EXHIBIT       A      .)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT`S STANDING TO BRING THIS MOTION. (EXHIBIT       A    .)

(3)    COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT`S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED.  FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK`S OFFICE OR THE REGISTER OF THE        COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED.    (EXHIBIT      A    .)

## DECLARATION AS TO BUSINESS RECORDS

I, _James D. Clig_, THE _Supervisor_ OF Chase Home Finance, LLC , THE MOVANT HEREIN, DECLARE PURSUANT 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT _Ft. Worth, TX_
ON THIS _12_ day of
August, 2009

_James D. Clig_
_Supervisor_

TITLE

Chase Home Finance, LLC
3415 Vision Drive
Columbus, OH 43219-6009

### DECLARATION

I, _James D. Clig_, THE _Supervisor_ OF Chase Home Finance, LLC , THE MOVANT HEREIN, DECLARE PURSUANT 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT _Ft. Worth, TX_
ON THIS _12_ day of
August, 2009

_James D. Clig_
_Supervisor_

TITLE

Chase Home Finance, LLC
3415 Vision Drive
Columbus, OH 43219-6009

**Exhibit C**

B6A (Official Form 6A) (12/07)

In re  **Stephanie Grossman**                                                                Case No. _____
                                                    ,
                              Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Property at<br>29 Fiske Avenue<br>Merrick Avenue, NY 11566** | **Joint tenant** | **J** | **290,000.00** | **273,000.00** |

|  | Sub-Total > | **290,000.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **290,000.00** |  |

  __0__  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                                Best Case Bankruptcy

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

IN RE:                                          CASE NO.: 09-75542 reg

Stephanie Grossman,                             Chapter: 7

                        DEBTOR.      **AFFIDAVIT OF SERVICE**

--------------------------------------------------------X

STATE OF NEW YORK     )
                           ) ss:
COUNTY OF NASSAU    )

        Rose Saramago, being duly sworn, deposes and says:
        I am not a party to this action, am over 18 years of age and reside in Suffolk County, New York.
        On *August 21*, 2009, I served the within Notice of Motion, Motion for Modification of the Automatic Stay on the following parties, by depositing a true copy thereof in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following persons at the last known address set forth after each name:

Stephanie Grossman
29 Fisk Avenue
Merrick, NY 11566

Gregg H. Grossman
29 Fisk Avenue
Merrick, NY 11566

Richard A. Klass, Esq.
16 Court Street, 29th FL
Brooklyn, NY 11241

Marc A. Pergament, Esq.
400 Garden City Plaza, Suite 403
Garden City, NY 11530

Diana G. Adams, Esq.
Long Island Federal Courthouse
560 Federal Plaza – Room 560
Central Islip, NY 11722-4437

                                        _Rose Saramago_
                                      Rose Saramago

Sworn to before me this
21st day of *August*, 2009

NOTARY PUBLIC

**JOHN J. BROCKS**
NOTARY PUBLIC STATE OF NEW YORK
#01BR6107807
COMMISSION EXPIRES APRIL 12, 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

     Stephanie Grossman,

                    Debtor.

**NOTICE OF MOTION AND APPLICATION
IN SUPPORT OF ENTRY OF AN ORDER VACATING STAY**

**ROSICKI, ROSICKI & ASSOCIATES, P.C.**
Attorneys for Movant
Main Office: 51 East Bethpage Road
Plainview, NY 11803
516-741-2585

# *ROSICKI, ROSICKI & ASSOCIATES, P.C.*

### *ATTORNEYS AT LAW*

## *Main Office: 51 East Bethpage Road*

## *Plainview, New York 11803*

### *Telephone (516) 741-2585*

### *Facsimile (516) 873-7243*

*We are a debt collector and are attempting to collect a debt.*

*Any information obtained may be used for that purpose.*

August 20, 2009

United States Bankruptcy Court
Eastern District of New York
Long Island Federal Courthouse
290 Federal Plaza, PO Box 9013
Central Islip, NY 11722

       Re:    **Debtor: Stephanie Grossman**
               **Bankruptcy Case No.: 09-75542 reg**
               **Chapter 7**

Dear Sir or Madam:

Enclosed herewith please find one Chambers Copy of a Notice of Motion and Motion for Modification of the Automatic Stay. The appropriate filing fee in the amount of $150.00 has been paid online.

Please file this motion with the Court as it is scheduled for hearing on September 23, 2009 at 9:30 AM.

Please note that pursuant to local rules, the order will be uploaded electronically after the return date of the motion.

Very truly yours,

ROSICKI, ROSICKI & ASSOCIATES, P.C.

Rose Saramago
Paralegal

Enclosures

# NOTICE OF MOTION COVER SHEET

NAME OF DEBTOR
Stephanie Grossman

CASE NUMBER
09-75542 reg

PLAINTIFF/MOVANT
Chase Home Finance, LLC

DEFENDANT/RESPONDENT

ATTORNEYS
Rosicki, Rosicki & Associates, P.C.
Main Office: 51 E Bethpage Road
Plainview, NY 11803

ATTORNEYS IF KNOWN
Richard A. Klass, Esq.
16 Court Street, 29th FL
Brooklyn, NY 11241

PRINT NAME OF ATTORNEY
Lisa Milas, Esq.

SIGNATURE

## NATURE OF SUIT
(Check all Boxes That Apply to This Motion)

___X___    To Grant Relief from the Automatic Stay
           11 U.S.C. Section of 362(d)  ($150.00 fee required)

_____    To Withdraw the Reference of a Case
             11 U.S.C. Section 157(d)      ($75.00 fee required)

_____    To Compel Abandonment of Property
             of the Estate - B.R. 6007 (b) ($75.00 fee required)

_____    To Convert (fee not required)

_____    To Dismiss (fee not required)

_____    To Assume/Reject (fee not required)

_____    To Extend Time to Object to Discharge/Dischargeability

_____    To Extend Exclusivity Period to File Plan, Etc.

_____    Objections to Claims

_____    For Summary Judgment

_____    Other- Specify Type of Motion _____

FILING FEE (Check One) _____ Fee Attached ___X___ Fee Paid Online